RACHEL JULAGAY
Federal Defender
R. HENRY BRANOM JR.
Senior Litigator
Federal Defenders of Montana
Great Falls Office
104 2nd Street South, Suite 301
Great Falls, MT 59401
rachel_julagay@fd.org
Phone:  (406) 727-5328
Fax:  (406) 727-4329
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS MONTANA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERTO OROZCO-RAMIREZ,<br><br>Defendant. | **Case No. CR 26-11-GF-BMM**<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

Defendant Roberto Orozco-Ramirez, by and through his attorneys Rachel Julagay, Federal Defender, R. Henry Branom Jr., Senior Litigator, and the Federal Defenders of Montana, moves to dismiss the Indictment in this case.  This memorandum supports that motion.

1

**INTRODUCTION**

Precedent from the Supreme Court of the United States and the Ninth Circuit Court of Appeals requires the dismissal of the government's 8 U.S.C. § 1326 Illegal Reentry charge. *See, e.g., United States v. Ramos*, 623 F.3d 672, 681 (9th Cir. 2010); *United States v. Valdivias-Soto*, 112 F.4th 713, 725 (9th Cir. 2024). A defendant charged with illegal reentry in violation of 8 U.S.C. § 1326 has a due process right to collaterally attack the removal order upon which the charge is predicated. *United States v. Mendoza Lopez*, 481 U.S. 828, 837-838 (1987). In this instance, the government seeks to reinstate a defective and invalid stipulated removal order in 2009 pursuant to an unlawful process that violated Roberto's statutory, regulatory, and due process rights in immigration court.  Because Roberto qualified for relief from removal in 2009—namely, (1) asylum, withholding of removal, and protection under the Convention Against Torture (CAT), and (2) voluntary departure—the defective stipulated removal order not only violated his rights but also caused him prejudice. In identical or materially similar circumstances involving defendants challenging the reinstatement of invalid stipulated removal orders, courts have granted dismissal under 8 U.S.C. § 1326(d). *See, e.g., United States v. Gomez*, 757 F.3d 885, 893 (9th Cir. 2014) (citing *Ramos*, *supra*, and *U.S. v. Reyes-Bonilla*, 671 F.3d 1036 (9th Cir. 2012)). The Court should do the same here.

## STATEMENT OF FACTS

Roberto Orozco-Ramirez was sent by his family to the U.S. as a minor to protect him from the violence his family was experiencing in the late 1990s and early 2000s. The dangers were not hypothetical: his father was kidnapped, his stepbrother was repeatedly kidnapped and beaten, and one stepbrother completely disappeared likely as a result of kidnapping. In addition, Roberto's family recently advised his brother was just murdered on March 10, 2026, in Mexico.

Since arriving in the U.S. in approximately 2000, Roberto has married and is the father to four sons who are U.S. citizens ranging in age from 8 to 19. He is a baseball coach, father, and husband. Single-handedly, he has built a successful diesel repair business in Froid, Montana. His community values his services and more importantly values him and his family personally. He contributes to his community, volunteers in his community, and is an excellent father and husband. He has community wide support for his release. The Roosevelt County Sheriff does not believe him to be a danger.

In September 2009, Roberto was detained as part of a generic sweep called Operation Community Shield. The detention resulted ultimately in his stipulated removal order just days later. The 2009 stipulated removal order is the predicate of the Government's charge herein. Exhibit 5. (Exhibits 1-6 are filed under seal pursuant to L.R. 49.3(a)(2)(B))

The documents the government relies on were completed and dated September 16, 2009, at 12:00 a.m. – within 30 minutes of Roberto's arrival at the local jail and at most a few hours from his apprehension. *Compare*, Exhibit 1, *with* Exhibits 4, 6. Roberto was given no time to consult with anyone, including counsel.

Special Agent (SA) McClune took approximately 5 to 10 minutes to go through all the forms with Roberto. In 2009, Roberto's English skills were very limited. SA McClune led Roberto to believe that 1) he could ask for a hearing and litigate his right to remain in the United States and it would delay the proceedings six months or more at which time he would be deported and would be unable to return or 2) he could voluntarily depart the United States, which would occur nearly instantly and preserve his ability to return in the future. Roberto believed that the documents he signed were for this "voluntary departure" option and was told by SA McClune to sign all of the forms to voluntarily depart the United States, thereby preserving his ability to return to the U.S. SA McClune did not inform Roberto that the document he signed functioned like a removal order and waived all his rights to a regular removal proceeding under 8 U.S.C. § 1229. SA McClune also failed to inform Roberto that he qualified for relief from removal and could seek custody redetermination from the immigration judge (IJ) immediately. Roberto never saw an IJ and was removed without due process.

The September 16, 2009 Notice to Appear (NTA) (Form I-862) advises that Roberto would be seen by an IJ who would explain his rights, including the right to voluntarily depart, but the NTA has no date nor time. *See*, Exhibit 2. Roberto asked for counsel but was never given a list of attorneys or organizations that could help him, contrary to the statements in the NTA. And, as noted above, Roberto never saw an IJ.

Further, the NTA allows Roberto to waive a ten-day waiting period prior to a hearing, and Roberto did not voluntarily waive this right. His stipulated removal order was signed on September 22, 2009, again, without Roberto ever having seen an IJ and at least four days before expiration of his ten-day, non-waived, waiting period. This scenario is consistent with Roberto's belief that he had entered into a voluntary departure.

Throughout SA McClune's forms and findings, he incorrectly stated Roberto had no family in the U.S. and that no relations were U.S. citizens. Exhibit 3. At the time of the detention in 2009, Roberto had one child in the U.S., Roberto Orozco Lazcano, who was a U.S. citizen and was identified in Exhibit 1. He also had a child, Eduardo Orozco Lazcano who was born the day before Roberto was physically removed in 2009, also a U.S. citizen (9 days after detention and without ever having seen his new son).

The Form I-213 filed by SA McClune fails to state that he advised Roberto of his right to voluntary departure. It further fails to assert he advised Roberto that the process he entered into was *not* for the purpose of obtaining voluntary departure, but rather waived the rights he would otherwise have had in immigration court. Exhibit 4; Exhibit 5. Instead, this process ensured Roberto's summary removal from the United States without the opportunity to present any defenses to removal during a full and fair evidentiary hearing. Exhibit 2; Exhibit 4; Exhibit 5.[1] In addition to voluntary departure, Roberto also had a viable claim for asylum, withholding of removal, and protection under the CAT that he could have presented in 2009—something that the IJ had a duty to investigate and to advise him of. 8 C.F.R. § 1240.11(a)(2). Again, this did not occur. As noted,  Roberto never even saw the IJ.

## SUMMARY OF ARGUMENT

Roberto moves this Court for an order dismissing the illegal reentry charge and declaring the 2009 Stipulated Removal Order, which underpins the Government's entire charge, to be unconstitutional. The Government previously ordered Roberto removed through a truncated, abbreviated administrative procedure that prioritized speed over deliberation, and which was defective from the issuance

---

[1] McClune's report does assert Orozco was "served" with specified documents, including an I-826 which includes a Notification of Rights, also provided herein as part of Exhibit 6. Importantly, that Notification of Rights says nothing about entering into a Stipulated Removal Order that would prevent Roberto from being able to return to the United States.

of the NTA. This process—entitled the "Stipulated Removal Program"—has already been found unlawful by the Ninth Circuit and numerous district courts.

## ARGUMENT

The Ninth Circuit holds that a stipulated removal where an individual is not represented by counsel is not enough to demonstrate a valid waiver of rights to a hearing before an IJ or to appeal. *Ramos*, 623 F.3d at 681 ("We cannot conclude that the waiver of rights, including the right to appeal, was 'considered or intelligent' without evidence that a detainee was 'able to understand the questions posed to him' when put to the choice of foregoing all rights or remaining in detention until he could appear before an IJ."); *Gomez*, 757 F.3d at 896 (same). This is particularly true where there is no hearing conducted by an IJ who (1) inquires whether the individual knowingly, voluntarily, and intelligently entered into the stipulated removal order or (2) explores whether the individual qualifies for relief from removal. Not only is this a due process violation, it is also a regulatory violation. *See* 8 C.F.R. § 1003.25(b) (requiring an IJ to "determine that the [individual]'s waiver is voluntary, knowing, and intelligent" when unrepresented); 8 C.F.R. § 1240.11(a)(2) (requiring an IJ to inform an individual of any relief available to them).

A removal order is fundamentally unfair if the individual's "due process rights were violated by defects in the underlying deportation proceeding," and he suffered prejudice as a result. *United States v. Aguilera-Rios*, 769 F.3d 626, 630 (9th Cir.

2014) (quoting *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004)).

A defendant charged with illegal reentry in violation of 8 U.S.C. § 1326 has a due process right to collaterally attack the removal order upon which the charge is predicated. *See Mendoza-Lopez*, 481 U.S. at 837-38. Following *Mendoza-Lopez*, Congress codified the procedure for a collateral attack, requiring that a defendant show: (1) he exhausted administrative remedies that were available to seek relief from removal; (2) the removal proceedings improperly deprived him of judicial review; and (3) the entry of the order was fundamentally unfair. *See* 8 U.S.C. § 1326(d). The final requirement, which is fundamental unfairness, is fulfilled where the defendant shows that defects at the removal proceeding deprived him of due process and he suffered prejudice as a result. See *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011).

The Supreme Court in *Palomar-Santiago* describes why the right of collateral attack of the underlying deportation order is important:

> Once a noncitizen is removed, it is a crime to return to the United States without authorization. §1326(a). The statute criminalizing unlawful reentry did not originally allow defendants to raise the invalidity of their underlying removal orders as an affirmative defense. This Court later held, however, that the statute "does not comport with the constitutional requirement of due process" insofar as it "impose[s] a criminal penalty for reentry after any deportation, regardless of how violative of the rights of the [noncitizen] the deportation proceeding may have been." *United States v. Mendoza-Lopez*, 481 U. S. 828, 837, 107 S. Ct. 2148, 95 L. Ed. 2d 772 (1987). "[A]t a minimum,"

"a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the [noncitizen] to obtain judicial review." *Id.*, at 839, 107 S. Ct. 2148, 95 L. Ed. 2d 772.

*United States v. Palomar-Santiago*, 593 U.S. 321, 324 (2021) (alterations in original). 6

## I.    Mr. Orozco-Ramirez's 2009 stipulated removal order is invalid and cannot serve as the basis for his prosecution under § 1326.

In this case, Roberto wasn't afforded any of the protections to which he was entitled, including a full and fair removal proceeding.  He wasn't given a valid NTA with a date certain at which he could be heard.  He did not waive his right to a hearing to be held at least 10 days later, no hearing at all was held, and a removal order entered 6 days after his apprehension.  He was not given a list of organizations and attorneys available to help at no cost – contrary to the forms executed by SA McClune and Roberto.  He never had a hearing before an IJ, nor did any IJ ever explain his rights, inquire whether he knowingly, intelligently, and voluntarily waived those rights, or explore whether he qualified for relief from removal—*e.g.*, voluntary departure and asylum, withholding of removal, and CAT protection—and advise him of his eligibility.

Roberto has satisfied each of the requirements to overturn his 2009 Stipulated Removal Order.  Because Roberto never received proper notice of the hearing, never waived his right to notice of the hearing, never had a hearing with an IJ who ensured that his waiver of rights was valid, and the stipulated removal order itself is based

on a defective NTA, Roberto meets the requirements of § 1326(d)(1) and (2). A person meets those requirements under the statute's plain text if there are no "available" "administrative remedies" and no "opportunity for judicial review." 8 U.S.C. § 1326(d).

> **a. The forms the government relies on are incomplete and internally contradictory.**

In *Palomar-Santiago*, the noncitizen was found to have failed to exhaust his administrative remedies and thus could not challenge the underlying deportation order. *See id.* Roberto's situation is easily distinguishable. First, he was never convicted of any crime as an underlying basis for removal. Secondly his removal proceeding happened in a vacuum and, at best, in a 30-minute timeframe during which the SA filled out the forms inaccurately, and gave Roberto notice of rights that never came to pass—i.e, gave Roberto an undated NTA that was never corrected or supplemented and which resulted in his removal from the U.S. without any appearance before an IJ.

Even assuming arguendo that some individuals in Roberto's circumstances can avail themselves of judicial review, the rushed nature of service and signature by Roberto of documents that are inconsistent amongst themselves means that he did not tender a knowing waiver of appeal.

Finally, the Ninth Circuit in *United States v. Valdivia-Flores* ruled that the "check the box" forms used here violate due process, and thus Roberto satisfies §

1326(d)(1) and (2) for this reason as well. 876 F.3d 1201, 1204-06 (9th Cir. 2017):

> The form's deficiencies are magnified because Valdivia-Flores "was not represented and never had the benefit of appearing before an [immigration judge], who, we presume, would have adequately conveyed both [his] appeal options and the finality associated with waiving appeal." *Ramos*, 623 F.3d at 681 (internal quotation marks omitted). Indeed, the Notice of Intent was issued without a hearing before an immigration judge despite Valdivia-Flores's request for a hearing. The government provides no evidence that an immigration officer ever met with Valdivia-Flores to explain the form or the issues it raised; rather, the government merely relies on the sufficiency of the form's text to communicate Valdivia-Flores's options.

> Under these circumstances, we conclude that Valdivia-Flores's waiver of the right to seek judicial review was not considered and intelligent. Accord *Gomez*, 757 F.3d at 896 (explaining that the fact that an alien signed a waiver was insufficient to meet the government's burden to establish a valid waiver when the record reflected deficiencies in the advisements given). Therefore, he was deprived of due process and satisfies the first two prongs of 8 U.S.C. § 1326(d).

*Id*. at 1205-1206.

The *Valdivia-Flores* ruling was overruled in *Alfred v. Garland*, 64 F.4th 1025, 1029 (2023), on other grounds unrelated to the procedural deficiencies – i.e., that the underlying criminal activity of *Validiva-Flores* prohibited relief. Thus, the discussion regarding procedure is still valid and applicable to this matter.

Similarly, Roberto was given and asked to sign at substantially the same time, not only the Stipulation for a Removal Order (Exhibit 4) but also forms that advised him of rights to appeal, advising him that he would have a hearing at least 10 days later, that an IJ would explain his rights to him, that he would be advised of other

rights he might have, including the right to voluntary departure, etc., as well as the defective NTA that was never supplemented (Exhibit 2). Further, all of this occurred within hours of his initial detention, without any real opportunity to consult with ANYONE much less legal counsel AND without being provided the list of counsel or organizations who could provide help as required by 8 U.S.C § 1229.

Roberto has satisfied the first two requirements of a collateral attack on a Stipulated Removal Order under 8 U.S.C § 1326(d) because there simply are no administrative remedies available to be exhausted in an administrative removal proceeding that does not even occur and which is defective, nor is there any form of judicial review to challenge the determination by SA McClune who failed to properly interview Roberto regarding his family in the U.S. or his credible fear or his length of stay in the U.S.

> **b. The Stipulated Removal Order is invalid because no IJ ever ensured that Roberto's waiver of rights was knowing, voluntary, and intelligent or investigated whether he qualified for relief from removal and advised him of his eligibility, and SA McClune falsely told him he did not qualify for relief.**

It is the government's burden of proof to prove the validity of Roberto's waiver of rights. *Gomez*, 757 F.3d at 893 (9th Cir. 2014) ("Gomez argues that because he contests the validity of his waiver, the government's reliance on that form—without more—is insufficient to prove by "clear and convincing evidence" that his waiver was valid. Guided by *Ramos* and *Reyes-Bonilla*, we agree."); *see also*

12

*Valdivias-Soto*, 112 F.4th at 725 (post-*Palomar-Santiago*, the government continues to bear the burden to show the validity of a waiver by clear and convincing evidence). Here, the government cannot meet that burden.

As explained in *United States v. Vasquez-Lopez*:

> In *Ramos*, the uncounseled Spanish-speaking alien detainee's waiver was found to be invalid for several independent reasons. 623 F.3d at 680. Ramos had entered the country approximately twenty years before his removal proceeding. *Id.* at 675. A deportation officer gave Ramos a "Stipulated Request for Removal Order and Waiver of Hearing" form, which listed several stipulations and rights in English and Spanish. *Id.* at 677. Then without a hearing, an IJ accepted the stipulation, finding the waiver to be voluntary, knowing, and intelligent, and ordered Ramos removed. *Id.* at 679. The Ninth Circuit found the waiver was invalid for several independent reasons, was procedurally defective, and deprived Ramos of the opportunity for meaningful judicial review. *Id.* at 680, 682. The Ninth Circuit explained that Ramos never "receive the benefit of a review of his potential eligibility for relief" and "never had the benefit of appearing before an IJ." *Id.* at 681-82.

No. CR-21-02221-001-TUC-RCC (DTF), 2022 WL 1558490, at *3 (D. Ariz. Apr. 15, 2022). The same defects are present in this matter.

Roberto satisfies the requirements of § 1326(d)(1) and (d)(2) because his waiver of his rights—to appear before an IJ, to be represented by counsel, to a full and fair removal proceeding, to apply for relief, to seek custody redetermination, and to appeal was not considered and intelligent—and thus his removal violated due process and deprived him of the ability to exhaust administrative remedies or seek judicial review. As stated above, the Ninth Circuit has held that a stipulated removal

13

where an individual is not represented by counsel is not enough to demonstrate a valid waiver of rights to a hearing before an IJ or to appeal. *Ramos*, 623 F.3d at 681 ("We cannot conclude that the waiver of rights, including the right to appeal, was 'considered or intelligent' without evidence that a detainee was 'able to understand the questions posed to him' when put to the choice of foregoing all rights or remaining in detention until he could appear before an IJ."); *Gomez*, 757 F.3d at 896 (same). Not only is this a due process violation, but it is also a regulatory violation. *See, e.g.,* 8 C.F.R. § 1003.25(b) (requiring an IJ to "determine that the [individual]'s waiver is voluntary, knowing, and intelligent" when unrepresented); 8 C.F.R. § 1240.11(a)(2) (requiring an IJ to inform an individual of any relief available to them).

Here, Roberto spent thirty minutes with SA McClune before signing the stipulated removal order, and their entire interaction occurred in English. That is an exceedingly brief period of time for the SA to provide the written stipulation, read the entire document containing all of Roberto's rights, and for Roberto to sign and agree to give up all rights to a hearing, rights to appeal, rights to an attorney, and rights to seek relief from removal. In addition, Roberto was erroneously informed that he did not qualify for any relief from removal. Roberto was not represented by counsel at the time he purportedly waived his rights. Under these circumstances, his waiver of his rights was not valid, and the IJ who entered the final removal order did

not make any finding that the waiver was knowing and voluntary. As set forth in the

Decision and Order of the Immigration Judge:

> Pursuant to the Notice to Appear issued September 16, 2009 (Exhibit #1). the respondent is charged with being removable as indicated above. The respondent. representing himself, has submitted a statement (Exhibit #2) wherein he waives a personal hearing before the Immigration Judge (to include a bond hearing and/or bond custody redetermination hearing and a merits hearing), and admits and concedes with regard to the truthfulness or the allegations and charges contained in the Notice to Appear. The respondent has made no application for relief from removal proceedings such as would allow him to remain in the United States, but instead requests issuance of an order by the Court for his removal to his native country. A similar request has been received from the Department of Homeland Security. (Exhibit #3). There being no factual or legal issues to be resolved or in dispute and there being no request for relief from deportation, or discretionary considerations to be exercised by the Court, it appears appropriate and in the best interests of justice to grant the requests of the parties. Based upon the respondent's admissions, the charges of removal are sustained by evidence that is clear, convincing and unequivocal. Accordingly, the following Order shall be entered:
>
> ORDER:  It is hereby ordered that the Respondent be REMOVED from the United States to Mexico on the charges contained in the Notice to Appear.

Exhibit 5.

Even if the IJ had made such a finding, that finding would be erroneous given

the insufficient record to support the validity of the waiver. *See Gomez*, 757 F.3d at

889 ("[T]he Immigration Judge ("IJ") violated 8 C.F.R. § 1003.25(b) by finding

Gomez's waiver of rights 'voluntary, knowing, and intelligent' on the basis of an

insufficient record" where the record below was a stipulated removal request).

Further, because Roberto's waiver was not voluntary, knowing, and

15

intelligent, he was deprived of the rights to counsel and appeal as well as the right to a meaningful opportunity for judicial review. *See Pallares-Galan*, 359 F.3d at 1096. *Palomar-Santiago* does not change that fact, as that case involved the narrow question of whether a former lawful permanent resident is excused from proving exhaustion and deprivation of judicial review simply by showing that they were not deportable as charged. Here, Roberto does not contend that he was not deportable as charged. Rather, he contends that, because he was removed through a stipulated removal order, his waiver of appeal was not knowing and intelligent, and, therefore, he was deprived of his right to appeal and a meaningful opportunity for judicial review. *See Ramos*, 623 F.2d at 681.

Post-*Palomar-Santiago*, the Ninth Circuit has continued to find that an invalid waiver satisfies both exhaustion of administrative remedies and the deprivation of judicial review elements. *See United States v. Mangas*, No. 19-50319, 2022 WL 898594, at *1 (9th Cir. Mar. 28, 2022) (unpublished) (finding that Mangas satisfied both exhaustion of administrative remedies and deprivation of the opportunity for judicial review elements "because his purported waiver of the right to contest the charges against him had not been knowing, voluntary, and intelligent" in context of administrative removal). As in *Mangas*, Roberto's purported waiver—after meeting with the SA in English for only about thirty minutes, uncounseled, and having been erroneously informed he did not qualify for relief from removal—was not knowing,

voluntary, and intelligent, and it therefore deprived him of the opportunity for judicial review. *See also United States v. Rosas-Ramirez*, 2025 WL 2614982, at *6-10 (N.D. Cal. Sept. 10, 2025) (finding waiver of rights invalid where IJ did not provide mandatory advisal prior to issuing removal order); *United States v. Morales-Rodriguez*, 744 F.Supp.3d 1036, 1048-49 (S.D. Cal. Aug. 13, 2024) (finding waiver invalid).

SA McClune's misstatement to Roberto that he was not eligible for relief from removal, and the failure of the agency to have an IJ explore whether that was, in fact, correct, are also fatal flaws. *Valdivias-Soto*, 112 F.4th at 725-29. District courts applying *Valdivias-Soto* have found the same. *See United States v. Gutierrez-Lopez*, 793 F.Supp.3d 1297, 1304-05 (E.D. Wa. July 17, 2025) ("In *United States v. Valdivias-Soto*, 112 F.4th 713, 725 (9th Cir. 2024), the Ninth Circuit made clear that the Government's burden to prove a valid waiver of judicial review remains applicable post-*Palomar-Santiago*. The impact of *Palomar-Santiago* on the waiver context is that misadvice as to an immigrant's eligibility for relief from deportation will not render a waiver of judicial review invalid. *Valdivias-Soto*, 112 F.4th at 727-28. After all, the nature of the right of judicial review is to correct a decision-maker's substantive errors. *Id.* But if an immigration officer or an immigration form misleads an immigrant about the availability to "*apply*" for relief, then the Government cannot carry its burden of establishing a waiver of the right to review. *See id.* at 727.");

*United States v. Vasquez-Lopez*, CR-21-02221-TUC-RCC (DTF), 2022 WL 1555393, at * (D. Ariz. Apr. 15, 2022) (finding waiver invalid "because Defendant was not informed that he was eligible for voluntary departure relief."). This Court should too.

Thus, Roberto has satisfied the first two prongs of § 1326(d).

### c. Proceedings were fundamentally unfair and Roberto suffered prejudice.

A removal order is fundamentally unfair if the individual's "due process rights were violated by defects in the underlying deportation proceeding," and he suffered prejudice as a result. *United States v. Aguilera-Rios*, 769 F.3d 626, 630 (9th Cir. 2014) (quoting *Pallares-Galan*, 359 F.3d at 1095). To establish prejudice, Roberto need only demonstrate that, absent the due process violations, there was a plausible ground for relief. Relief need not have been certain; a reasonable probability is sufficient. *United States v. Arrieta*, 224 F.3d 1076, 1080 (9th Cir. 2000); *see also Barron v. Bondi*, 2025 WL 763475, at *1 (9th Cir. Mar. 11, 2025) (same). As set forth below, Roberto was eligible for at least two forms of relief, both of which had at least a reasonable probability of being granted: voluntary departure, 8 U.S.C. § 1229c, and asylum, withholding of removal, and CAT protection, 8 U.S.C. § 1158; 8 U.S.C. § 1231(b)(3); 8 C.F.R. §§ 1208.16-18.

Here, Roberto's equities were substantial at the time of his 2009 detention and removal and would have materially affected both discretionary and non-

discretionary relief determinations had he been afforded a lawful proceeding.

First, Roberto had deep and growing family ties in the United States. At the time of his detention, he had lived in the United States for many years. He was already the father of a U.S. citizen child, and a second U.S. citizen child was born one day before his physical removal. These facts were not marginal; they went directly to relief eligibility and discretionary balancing. Family unity is a central consideration in immigration adjudications, particularly with respect to voluntary departure and humanitarian relief. Yet Roberto was never given an opportunity to present these equities because SA McClune erroneously recorded that he had no family in the United States  and no IJ complied with 8 C.F.R. § 1240.11(a)(2) to ensure that Roberto did not, in fact, qualify for relief (which he clearly did).

Second, Roberto's personal history reflected exceptional positive equities. After arriving in the United States as a minor fleeing severe family directed violence, Roberto established a stable life, married, and became the primary provider for his household. He has since built a successful diesel repair business, contributed economically to his community, volunteered his time, and served as a coach and mentor to children, including his own U.S. citizen sons. These facts are precisely the type of equities IJs routinely weigh in evaluating discretionary relief. Their absence from the record was not incidental—it was the direct result of a proceeding that foreclosed any meaningful presentation of evidence.

Third, Roberto's equities were particularly compelling in light of the humanitarian considerations underlying asylum related relief. Roberto's family was the direct target of extreme violence, including the kidnapping of his father, repeated kidnappings and beatings of a stepbrother, and the disappearance of another step brother who was never found.[2] Courts have recognized that persecution directed at close family members can establish eligibility for protection where the applicant himself is part of the targeted family unit. As the Ninth Circuit has repeatedly held, "the family remains the quintessential particular social group" for purposes of evaluating asylum eligibility. *Rios v. Lynch*, 807 F.3d 1123, 1128 (9th Cir. 2015); *see also Ayala v. Sessions*, 855 F.3d 1012, 1021 (9th Cir. 2017) (same); *Sanchez-Trujillo v. INS,* 801 F.2d 1571, 1576 (9th Cir.1986) (family is "[p]erhaps a prototypical example of a 'particular social group'"). Had Roberto been permitted to present his history and family circumstances, there was at least a plausible basis for asylum, withholding of removal, or protection under the CAT.   Importantly, although asylum is a discretionary form of relief, withholding of removal and CAT protection are not. "Unlike asylum, withholding of removal is not discretionary. The Attorney General is not permitted to deport an [individual] to a country where her life or freedom would be threatened on account of one of the protected grounds…."

---

[2] As set forth above, Roberto's brother was also recently murdered on March 10, 2026.

*Al-Harbi v. INS*, 242 F.3d 882, 888 (2002) (emphasis added). Further, "all evidence relevant to the possibility of future torture *shall* be considered." 8 C.F.R. § 1208.16(c)(3) (emphasis added).

Finally, voluntary departure was plainly plausible for both pre- and post-conclusion of proceedings. 8 U.S.C. § 1229c(a)(1),[3] (b)(1).[4] The factors to be considered in a request for pre-conclusion voluntary departure are well established, and include family ties within the United States, length of residence in the United States, hardship to the applicant's family if relief is not granted, and evidence of value and service to the community. *See, e.g., Campos-Granillo v. INS*, 12 F.3d 849,

---

[3] The <u>Attorney General</u> may permit an <u>alien</u> voluntarily to depart the <u>United States</u> at the <u>alien</u>'s own expense under this subsection, in lieu of being subject to proceedings under <u>section 1229a of this title</u> or prior to the completion of such proceedings, if the <u>alien</u> is not deportable under section 1227(a)(2)(A)(iii) or <u>section 1227(a)(4)(B) of this title</u>.

[4] The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense if, at the conclusion of a proceeding under section 240 [8 USCS § 1229a], the immigration judge enters an order granting voluntary departure in lieu of removal and finds that—
   (A) the alien has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served under section 239(a) [8 USCS § 1229(a)];
   (B) the alien is, and has been, a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure;
   (C) the alien is not deportable under section 237(a)(2)(A)(iii) or section 237(a)(4) [8 USCS § 1227(a)(2)(A)(iii) or 1227(a)(4)]; and
   (D) the alien has established by clear and convincing evidence that the alien has the means to depart the United States and intends to do so.

21

852 n.8 (9th Cir. 1994). Negative factors include the existence, seriousness, and recency of any criminal record, the nature and circumstances of the deportation ground at issue, and any  other information indicating bad character. *Id.*

Roberto had no disqualifying criminal history identified in the record, maintained strong family and community ties, and demonstrated long term stability and responsibility. Voluntary departure would have preserved Roberto's ability to lawfully reenter the United States and maintain family unity. The failure to advise Roberto of this option, combined with the suppression of his equities, deprived him of a meaningful chance to pursue relief that was well within reach  and served  to violate mandatory duties that are imposed on all IJs. Numerous district courts have found as much. *See United States v. Salazar-Aguilar*, No. CR-10-01350-TUC-JMR, 2010 WL 5563543, at *10 (D. Ariz. Dec. 8, 2010) (considering defendant's lengthy residence in the United States as a positive factor and ultimately determining he had a plausible claim for voluntary departure); *United States v. Vasallo-Martinez*, 360 Fed.Appx. 731, 733 (9th Cir. 2009) (considering defendant's one U.S. citizen child as a positive equity); *In re Felipe Sanabria-Dominguez*, 2010 WL 2601495, at *1 (BIA May 25, 2010) (unpublished) (same); *United States v. Monje-Campos*, No. EDCR 18-00334-JGB, 2019 WL 7576679, at *5 (C.D. Cal. June 10, 2019) ("Employment history is a positive equity which weighs in favor of the grant of voluntary departure."); *Monje-Campos*, 2019 WL 7576679, at *6 (voluntary

departure plausible where defendant had lived in the United States for three years and was gainfully employed despite controlled substance offense); *United States v. Santos-Lagunes*, No. 10-cr-2559-L, 2010 WL 3489326 (S.D. Cal. Sept. 3, 2010) (voluntary departure plausible with six years' residence in the United States despite conviction for kidnapping a minor); *United states v. Alcazar-Bustos*, 382 Fed. App'x 568, 570-71 (9th Cir. 2009) (unpublished) (voluntary departure plausible despite prior criminal convictions, prior drug use, and sporadic work history); *In re Pineda-Castellanos*, 2005 WL 3833024 (BIA Nov. 16, 2005) (unpublished) (affirming grant of voluntary departure where criminal history included six criminal convictions, including battery, drunkenness, and driving under the influence); *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004) (finding due process violation where IJ failed to inform noncitizen of eligibility for voluntary departure).

Roberto's family ties, humanitarian circumstances, community contributions, and lack of adverse factors together establish that relief was realistically available. Because the defective 2009 proceedings prevented any consideration of these equities, Roberto suffered actual prejudice. The outcome of the removal proceeding could plausibly have been different had due process been afforded.

In this case, Roberto was simply not given any opportunity whatsoever to challenge his removal or even explore options to improve his situation. Perhaps, if after having signed the stipulation, he had been brought before an IJ who then

23

interviewed him, advised him of his rights, the options for voluntary departure, the possibility of termination of removal or his right to protections if he was in fear of persecution or torture upon removal to Mexico, the stipulation might have been a valid waiver of his rights. In this case NONE of that occurred. Further, the documents which were all signed at the same time are inconsistent – some documents indicate that he will receive a hearing before an IJ, and that the IJ will advise him of his right to voluntary departure as well as other rights, yet in the end he allegedly waives ALL rights including the right of appeal and the right to administrative and judicial review. That cannot possibly be.

Roberto suffered a violation of his statutory, regulatory, and due process rights that prejudiced him.

## CONCLUSION

WHEREFORE, Mr. Orozco-Ramirez requests that this Court dismiss the Indictment, declare the 2009 Stipulated Removal Order unconstitutional, and order whatever further relief this Court deems necessary and just.

RESPECTFULLY SUBMITTED this 19th day of March, 2026.

/s/ Rachel Julagay

24

## CERTIFICATE OF COMPLIANCE – L.R. CR 47.2(c)

Rachel Julagay of the Federal Defenders of Montana hereby certifies that the Memorandum in Support is in compliance with Local Rule CR 47.2.  The Memorandum's line spacing is double spaced (except quotations), and is proportionately spaced, with a 14 point font size.  (Total number of words: 5,902, excluding captions and certificates).

RESPECTFULLY SUBMITTED this 19th day of March, 2026.


/s/Rachel Julagay

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on March 19, 2026, a copy of the foregoing document

was served on the following persons by the following means:

 1, 2  CM-ECF
_____ Hand Delivery
  3    Mail
_____ Overnight Delivery Service
_____ Fax
_____ E-Mail

1.     CLERK, UNITED STATES DISTRICT COURT

2.     PAULETTE L. STEWART
       Assistant United States Attorney
       United States Attorney's Office
              Counsel for the United States of America

3.     ROBERTO OROZCO-RAMIREZ
              Defendant

                                     /s/ Rachel Julagay